EDGAR S. NORTON, In Equity vs. HERBERT L. BERRY.

Cumberland.    Opinion November 26, 1921.

*A deed absolute in form, although from a third party, may be shown to be an equitable mortgage between the parties to a suit, but the proof, it is true, must be clear and convincing.*

A person acting as a friend and agent for another, and from time to time advances to such person money to assist him in carrying out any purpose he may have in mind, and takes from such person a deed absolute in form of real estate, or purchases and forecloses a mortgage on such real estate, if such transactions between such parties are entered into under an·understanding that the party holding the deed and the foreclosed mortgage is to transfer or turn back to the other party property, title to which is in his name, upon payment to him of all that is due him with interest, has in said property the interest only of a mortgagee under an equitable mortgage. Their relations are those of debtor and creditor. The criterion always is whether the transaction was intended to secure one party for claims against the other. Where a deed absolute in form is held as security only, the fact may be proved by parol. So long as the instrument is one of security, the borrower has a right to redeem upon payment of the loan.

On appeal by defendant. This is a bill in.equity to establish that the conveyances under which the defendant holds title to the premises described in the bill constitute an equitable mortgage, and for redemption. Upon a hearing on bill, answer, replication and proof, the sitting Justice decreed that the bill be sustained with costs, and that the matter be referred to a Master in Chancery, from which decree defendant took an appeal. Appeal dismissed. Decree affirmed with additional costs.

Case is fully stated in the opinion.

*Charles E. Gurney*, for plaintiff.

*Frank H. Haskell*, for defendant.

SITTING:  CORNISH, C. J., SPEAR, HANSON, DUNN, DEASY, JJ.

HANSON, J.  This is a bill in equity to establish that the conveyances under which the defendant holds title to the premises described in the bill constitute an equitable mortgage, and for redemption,

and is before the Law Court on appeal from the decree of the sitting Justice sustaining the bill, referring the matter to a master to take an account of the sum equitably due the defendant, and directing procedure for redemption, and establishing defendant's title in default of redemption by the plaintiff.

The record title before it was conveyed to the defendant was in the plaintiff's wife, Elizabeth C. Norton, who held it since 1898. In 1917 the plaintiff and his wife became estranged and the plaintiff commenced action against her to recover the real estate described in the bill.

The plaintiff was indebted to the defendant for money advanced to pay a mortgage to one Cressy and for other sums advanced by defendant to pay expenses of the foregoing action. Acting for the plaintiff, the defendant took an assignment to himself of the Cressy mortgage, and admittedly at the time, and for a long period thereafter, was by agreement, and having a power of attorney as well, acting for the plaintiff and in his interest, consulting him, advising him in relation to his property, the ways and means of securing a deed from his wife, and as to the cancellation of a timber contract which the wife had entered into for sale of the valuable timber on the land, and furnishing the funds therefor.

During all the period, covering many transactions, and the payment of all required money therefor, the defendant admits he was acting for the plaintiff to accomplish one special object—using defendant's own language—, "to fix it so that nobody could get it away from him." And the defendant also admits that such was the purpose and intention up to the date of the deed, when he claims that the plaintiff abandoned his desire to pursue the equity further, and said to defendant in effect,—"I will give you a deed of my part of the property for what I owe you."

The defendant therefore claims the property under a foreclosure of the Cressy mortgage above named, which became absolute May 4, 1918, and a warranty deed from Elizabeth C. Norton, wife of the plaintiff, in which the latter joined, dated September 8, 1919.

The sitting Justice found that "the evidence satisfactorily establishes, and the defendant in effect admits, that the transactions resulting in the acquisition and foreclosure of the Cressey mortgage, and thereafter up to September 8, 1919, constituted an equitable mortgage, as between the plaintiff and defendant."

"But the defendant contends that when he obtained the deed of September 8, 1919, his relations with the plaintiff were changed and that the plaintiff's right of redemption was extinguished and the defendant became the absolute owner of the property.

"That a deed absolute in form, although from a third party, may be shown to be an equitable mortgage between the parties to the suit, is well settled. The proof, it is true, must be clear and convincing.

"I think that the evidence introduced by the plaintiff measures up to this standard, and I find the fact to be in accordance with the plaintiff's contention."

The sitting Justice also found that the original relations existing between plaintiff and defendant were never expressly terminated. A careful examination of the record discloses that the finding is fully sustained by the testimony, and appellant has failed to maintain the burden assumed on appeal of showing the findings of the sitting Justice to be clearly wrong.

The findings of the sitting Justice in equity proceedings upon questions of fact necessarily involved are not to be reversed upon appeal unless clearly wrong, and the burden is on the appellant to satisfy the court that such is the fact; otherwise, the decree appealed from must be affirmed. *Haggett* v. *Jones*, 111 Maine, 348.

The defendant frankly admits the relation of debtor and creditor up to September 8, 1919, the date of the deed from the plaintiff and his wife. It will be remembered that securing a deed of the wife's interest, the recovery of the property from the wife from whom the plaintiff was estranged appears throughout the case to have been the chief purpose of the plaintiff. It was for that declared purpose principally that plaintiff sought the aid of the defendant. It was in the accomplishment of that purpose that much of the indebtedness between the two arose. The means taken to bring this about, the best method of securing the wife's consent and signature, were not devised by the plaintiff, but by the defendant, who was, at the request of the plaintiff, getting the title out of the plaintiff's wife and into defendant's name, "so that no one could get it away from the plaintiff." He had already paid the Cressy mortgage, and in addition had paid bills and executions, and loaned plaintiff money, all while acting as the financial and interested friend of the plaintiff, holding the Cressy mortgage as security, and a power of attorney, and up to the very day of the deed of September 8, 1919, he asserted he was

doing it all as the friend and agent of plaintiff, and that all he wanted from the transaction was the money due him and interest thereon. That in addition to these items he paid plaintiff's wife for her interest does not strengthen the defendant's position. Securing a deed from Mrs. Norton was the principal object of his agency and friendly co-operation, and he had agreed to furnish the money to pay her. Plaintiff could not get her signature. Defendant said he could, and that he could effect this even in the face of outstanding contracts with third parties which Mrs. Norton had entered into for the sale of timber. The event shows that he could do and did all he claimed, and that in addition to paying Mrs. Norton for her interest, he paid $500 to one Clark for a release of a timber contract made with Mrs. Norton.

All of these facts appear of record. All the details of the business up to the date of the deed show an unbroken, continuous relation of debtor and creditor. What is there in the evidence tending to show a change of that relation? The defendant says that before and on the 8th day of September, 1919, the plaintiff said to him "You may take my part of the property for what I owe you," and that then and there the relation ceased; that the plaintiff was no longer his debtor; the incident was closed; he was no longer a creditor of the plaintiff. A witness for the defendant who witnessed the signature of plaintiff to the deed testified that after signing the plaintiff said, "I have sold everything to Berry."

The plaintiff denies these statements, and reasserts his claim in the bill. Advanced in years and at the time of hearing weak mentally, plaintiff does not present as consistent personal support of his claims in the bill as is usually seen in equity proceedings, but the record amply discloses his honesty of purpose and his consistent continuous claim of the main point in the whole case, that on payment of the amount due defendant he was entitled to a conveyance of the property. The evidence is very clear upon the point, and clear as well that the defendant so understood their relation, and intended to convey to the plaintiff on such payment; that such was his intent and purpose after the deed was signed by plaintiff and his wife, and that in fact he did not change his purpose until the plaintiff demanded a deed the second time, a year after the deed was made to defendant. A recital of the plaintiff's version is here given. He testified: "I went to Mr. Berry and told him the situation I was in, and he said he

would buy the Cressy note and loan me money and help me out; and then he said he would do all he could for me . . . . . he loaned me money along from time to time and advised me what to do, and come to you (Mr. Gurney) as my attorney, and then he says to me, 'Give him the whole swing,' that is, the whole thing in his name and he give me my property back, and deed it over to me as he didn't want the property."

The attorney for the plaintiff after testifying in reference to his connection with incidents in the case, was asked in cross-examination: "Q—In making this transfer of September 8, 1919, you were acting for Mr. Norton, were you not? A—Well, now I recall that Mr. Berry came to my office and stated what he had bought from Mrs. Norton, and I prepared the deed and told him it couldn't be signed until her attorney had seen it, that it was a very rainy night, and Mr. Berry in his automobile went out to Westbrook to exhibit that to her attorney, Judge Lyons. I don't think that—I think those were the circumstances. Mr. Berry came to my office and told me what he had bought from Mrs. Norton, and wanted a deed prepared.

Q—At that time was while Mr. Norton was consulting with you as counsel? A—Yes, it was.

Q—Now if this transfer was to be considered an equitable mortgage, can you explain why you didn't draw some instrument which would show the exact intent of the parties?

A—I can; because Mr. Berry assured me particularly that he was doing this to help Mr. Norton, and that was all; that all he wanted out of it was his money, and I never had any misgivings concerning Mr. Berry's intentions, and he himself said that was his intention."

The plaintiff's daughter and son-in-law testify to substantially the same expression of intention by the defendant at the date of the deed.

The defendant himself testified "that Mr. Norton came to me and said they were trying to get his place away from him, and he told me it was in his wife's name, and he wanted to get it back, and he wanted to know if I wouldn't lend him some money to help him do it and I told him I would . . . . I advised him to go to an attorney . . . . and he went to an attorney with me at the time."

In the presence of facts in many respects similar to the instant case, and identical in the equities involved, this court has said: "Transactions like these constitute equitable mortgages. The

criterion always is whether the transaction was intended to secure one party for claims against the other. As was said in *Reed* v. *Reed*, 75 Maine, 264, 272: 'It is therefore a question of fact, whether, on looking through the forms in which the parties have seen fit to put the result of their negotiations, the real transaction was in fact a security or sale.'" *Bradley* v. *Merrill*, 88 Maine, 332. Where a deed absolute in form is held for security only, the fact may be proved by parol. *Libby* v. *Clark*, 88 Maine, 32. So long as the instrument is one of security, the borrower has a right to redeem upon payment of the loan. *Linnell* v. *Lyford*, 72 Maine, 283. If there was in fact an indebtedness or liability secured by the transaction, that was sufficient. *Reed* v. *Reed*, 75 Maine, 264, 272; *Bradley* v. *Merrill*, supra.

The evidence is clear and convincing that the deed of September 8, 1919, was and is an equitable mortgage between the parties. The defendant admits that the relation of debtor and creditor subsisted for a long period, as pointed out herein. The evidence fails to show any change in that relation. On the contrary, the evidence is overwhelming that there was no change, and that the equities in this case are with the plaintiff.

The entry will be,

> *Appeal dismissed.*
> *Decree affirmed with additional costs.*